### DALY v. SEAMAN.

(Supreme Court, Appellate Division, First Department. February 5, 1909.)

TRUSTS (§ 30½*)—CREATION—CORPORATIONS.

    A contract between defendant and the B. Co. licensed defendant to deal in articles embodying inventions, and authorized him to organize a corporation to be approved by the B. Co., to which his rights might be assigned. Without such approval defendant organized the N. Co. and assigned to it his rights under the contract. On the B. Co. declining to recognize the N. Co., the rights were reassigned to defendant. The reassignment agreement required defendant to furnish the N. Co. with patented articles so far as he could under his contract with the B. Co. Defendant being unable to fill its demands, the N. Co. notified defendant it would procure its goods elsewhere; defendant acquiescing. Thereafter the N. Co. assigned to the N. Corporation any rights it had under its agreement with defendant. Defendant having sued the B. Co. for breaking its contract, it settled with him. The N. Co. did not participate in the litigation, and when the N. Corporation filed its schedules for a dissolution no reference was made to the contracts as an asset. *Held*, that defendant did not hold the contract as trustee for either of the N. Cos., so as to entitle it to an accounting for the proceeds of the defendant's settlement with the B. Co., though he did not reassign the stock received from the N. Co. for the original assignment of his rights.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 41; Dec. Dig. § 30½.*]

Appeal from Special Term, New York County.

Action by Eugene V. Daly, receiver of the National Gramophone Corporation, against Frank Seaman. From an interlocutory judgment ordering a reference, defendant appeals. Reversed, and new trial ordered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
   114 N.Y.S.—69

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, HOUGHTON, and SCOTT, JJ.

John B. Stanchfield (Waldo G. Morse, on the brief), for appellant. James M. Gray, for respondent.

LAUGHLIN, J. The National Gramophone Corporation was duly organized under the laws of New York on the 10th day of March, 1899, and on the 13th day of December, 1901, an application was duly made to the Supreme Court in the county of Westchester for a voluntary dissolution of the corporation, and on the 5th day of April, 1902, the plaintiff was duly appointed permanent receiver in the proceedings for the dissolution of the corporation, and this action is brought by him as such receiver.

On the 10th day of October, 1896, the defendant made a certain contract, in writing, with the Berliner Gramophone Company, a corporation duly organized under the laws of Virginia, and thereafter and on the 4th day of November, 1896, made a contract with the National Gramophone Company, a domestic corporation, with a view to assigning his interest under the contract with the Berliner Company, and thereafter, and on the 1st day of October, 1897, the defendant and the National Gramophone Company made another contract purporting to reassign to the defendant the rights theretofore assigned by him to the National Gramophone Company. On the 31st day of March, 1899, the National Gramophone Company assigned and transferred to the National Gramophone Corporation all of its assets, including any interest it had in said agreement between the defendant and the Berliner Company, and all rights, title, and interest which it had under the two contracts made by it with the defendant. This action is based upon that assignment, and is brought, and the interlocutory judgment has been rendered, on the theory that the defendant, by virtue of said two contracts with the assignor of the National Gramophone Corporation, became a trustee for that corporation, and accountable to it for any profits he derived under his contract with the Berliner Company.

We are of opinion that the construction placed upon these contracts by the learned trial judge was erroneous, and that no trust relation existed between the defendant and the assignor of the National Gramophone Corporation. The Berliner Company owned certain letters patent for gramophones and for processes of producing records of sound, being the inventions of one Emile Berliner, and the purpose of the agreement of October 10, 1896, between that company and the defendant, so far as material to the issues here presented, was to license the defendant to buy, sell, and deal in gramophones and gramophone goods embodying said inventions and improvements therein throughout the United States, excepting in the District of Columbia, for a period of 15 years. It was expressly provided in the agreement that the defendant should be at liberty to organize a corporation or corporations under the laws of New York, or any other state, "with such powers and capital as the licensor may in writing approve, and after such approval the licensee may assign to said

corporation or corporations all the rights hereby granted by the licensor." With a view to assigning his rights under this contract, as therein authorized, the defendant caused the National Gramophone Company to be incorporated; but he did not obtain the approval of the Berliner Company thereto, and without such approval, by an indenture under his hand and seal, bearing date the 4th day of November, 1896, the day on which the company was incorporated, in consideration of the issue to him of capital stock of the National Gramophone Company of the par value of $49,800 out of the total issue of the par value of $50,000, assigned to it all his right, title, and interest in, to, and under the contract with the Berliner Company, and in and to the rights and privileges secured thereby. This assignment contains the following provisions, to wit:

"That I will use my best endeavors to secure the recognition by the said Berliner Gramophone Company of said transfer, and that, in case such recognition cannot be obtained, the said party of the first part will act with the party of the second part and place in its charge all the business to be carried out by me under said contract, obtain and turn over to said party of the second part all goods thereunder which may be advantageously used by said company, and turn over and deliver to it all profits and advantages whatever which may be derived from said contract with the Berliner Gramophone Company. To have and to hold the said contract and rights so transferred unto the said party of the second part, its successors and assigns, forever."

The National Gramophone Company issued the capital stock to the defendant, and business relations were resumed and continued between the defendant and that company under the assignment, until the 1st day of October, 1897, when, owing to the fact that the Berliner Company refused to consent to the assignment, or to recognize any rights of the National Gramophone Company thereunder, the other agreement was made between the defendant and the National Gramophone Company. This agreement recites the assignment, and that it was intended and desired by the parties that it should be recognized by the Berliner Company, that the Berliner Company declined to recognize the defendant's assignee and that it was "deemed advisable by the parties" thereto "that such assignment and transfer be modified as herein provided," and then provided that the parties had agreed as follows:

"The party of the first part shall and hereby does surrender and retransfer to the party of the second part the aforesaid contract and agreement, and all rights and privileges thereunder. And the party of the second part does hereby covenant and agree to and with the party of the first part to sell and deliver to it any and all gramophones and gramophone goods which it may require in its business, so far, and as rapidly, and in such quantities as it shall be possible for him to obtain the same under and by virtue of his said contract, and as shall be required by the parties of the first part, and that such goods be so sold and delivered at the price at which the same shall be received by him, with the addition thereto of one per centum (1%) to such price to cover any expenses of advertising which he may incur, and to compensate him for his risk and attention in carrying on such business under said contract. And it is further mutually covenanted and agreed that while the party of the first part shall purchase from the party of the second part such goods in sufficient quantities to satisfy the terms of his said contract, that he shall sell to no other person any of such goods, and shall use his best endeavors, so far as his other appointments may permit, to advance the interests of the party of the first part in selling such goods, and that the party of the first part shall use

its best endeavors to introduce such goods more generally and extend the sales
· of same."

Thereafter the business relations between the defendant and the
National Gramophone Company were continued under the agreement
of October 1, 1897, the defendant supplying all goods desired by the
National Gramophone Company, so far as he was able to obtain them
from the Berliner Company; but being unable to obtain sufficient to
meet the demands of the National Company at all times, and on the
2d day of April, 1900, the directors of the latter company adopted
a resolution that thereafter the company would procure its goods else-
where, and notified the defendant thereof. The defendant acquiesced
in this action of the National Company and proceeded to sell such
goods as he was able to obtain from the Berliner Company elsewhere.
Thereafter the defendant instituted various actions against the Ber-
liner Company for violations of his contract with it, and for an in-
junction and an accounting, and against others, which litigations were
all settled on the 3d day of February, 1903, upon the payment to him
by the Berliner Company of $35,000, and the delivery to him of stock
in the Consolidated Talking Machine Company of America of the
par value of $35,000.

The defendant has been held accountable for the profits of this set-
tlement. The precise contention made in support of the judgment
is that the agreement of October 1, 1897, between the National Gram-
ophone Company and the defendant, by which it reassigned to him all
right, title, and interest ·derived by it under his assignment of his
contract with the Berliner Company, was merely a modification of the
agreement by which he made the assignment to it, and that the pro-
visions of his assignment by which he obligated himself, in the event
that the consent of the Berliner Company to the assignment should
not be obtained, to account to the National Company for all profits
and advantages which he might derive from the contract with the
Berliner Company, remained in full force. We are of opinion that
this was not the intention of the parties as manifested by the agree-
ment; and if there were any doubt in that regard, it has been re-
moved by the practical construction of the agreements made and ac-
quiesced in by the parties for a long period of time. The fair con-
struction of the reassignment agreement is that all rights theretofore
assigned by defendant were reassigned to him and that the provisions
of the reassignment agreement with respect to the future relations
between the parties were intended to be substituted for those pre-
scribed in the assignment, and such has been the practical construc-
tion placed upon it by the parties. The defendant, being the prin-
cipal stockholder of the National Company, became a director and
president thereof; but, upon it being finally determined that the con-
sent of the Berliner Company to the assignment could not be obtain-
ed, he resigned both as president and as a director, and after these
vacancies were filled a resolution was formally adopted by the board
of directors, as follows:

"That the contract between the Berliner Gramophone Company and Frank
Seaman, dated October 10, 1896, and assigned by said·Seaman to this company
upon the 4th day of November, 1896, be and the same is hereby surrendered

and retransferred to him, upon his contract and agreement to sell and deliver to this company any and all gramophones and gramophone goods which it may require, so far as it shall be possible for him to obtain same under and by virtue of his said contract, and that such goods be so delivered and sold at the place at which the same shall be received by him, with the addition of 1 per centum to such price to cover any expenses of advertising which he may incur, and to compensate him for his risk and attention in carrying on such business under said contract. Such contract shall provide that while this company shall purchase from said Seaman such goods in sufficient quantity to satisfy the terms of his said contract, that he shall sell to no other person and shall use his best endeavors, so far as his other appointments may permit, to advance the interests of the company in selling such goods, and that this company shall use its best endeavors to introduce such goods more generally and extend the sales of the same. And it was further resolved that the president be authorized to execute the necessary agreements to carry into effect this resolution."

The reassignment agreement of October 1, 1897, was based on this resolution. It also appears that at this time the National Gramophone Company was having a new type of talking machine, known as the "Zonophone," constructed by the Universal Talking Machine Company, with which it had intimate relations. At the same meeting of the board of directors at which the reassignment of the contract to the defendant was authorized, there was spread upon the minutes with respect to this new talking machine, the following:

"Our new type of machine has been completed at last, and will probably be put on the market the end of this month. We have hundreds of unfilled orders for these machines, which will show distinct improvements over everything we have ever sold, and which will yield us a greater profit as well."

That contract between the Berliner Company and the defendant precluded him from engaging in selling other goods in competition with its gramophones or gramophone goods. It is evident that the National Gramophone Company recognized that it, as an assignee of the contract, would be bound by this provision, and it is manifest that it desired to be free to deal in other similar goods. The fact that the defendant did not reassign his stock, which was the consideration he received for the assignment, is not controlling with respect to the construction of the agreement. By virtue of the agreement of October 1, 1897, the National Gramophone Company was still to receive virtually all of the profits that it would have derived from the business had the Berliner Company consented to the assignment, and it had enjoyed such profits in the meantime. It is difficult to explain the action of the National Gramophone Company in finally terminating all relations with the defendant, and refusing to be further bound by the agreement of October 1, 1897, upon any theory consistent with an understanding on its part that the defendant was still representing it and acting as its trustee for it in his relations with the Berliner Company. It was not consulted with respect to the litigation instituted by him, nor did it take part in conducting such litigation or bear any part of the expense thereof. The litigation involved more than breaches of the contract which defendant had attempted to assign to the National Company. When its successor in interest, the National Gramophone Corporation, filed its schedules in the dissolution proceeding, no reference was made

to any of these contracts as an asset. The claim, therefore, that the defendant held the contract between him and the Berliner Company as trustee for the National Gramophone Company and of its successor cannot be sustained.

The material facts are found by the court, and, in view of the documentary evidence upon which they rest, it is manifest that they cannot be changed upon a new trial. The court has, however, found as matter of fact and in the findings of fact that it was the intention of the parties that defendant should account under the assignment for any profits he might realize on or by virtue of his contract with the Berliner Company, and that said assignment was never canceled or superseded in toto by the reassignment agreement, and therefore, although these findings are, strictly speaking, conclusions of law, yet it is not entirely clear that we would be justified in changing them, or in dismissing the complaint without changing them.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.